IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL GABRIEL HAWK,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    **CIVIL ACTION 12-0058-WS-B** |
| | ) |
| **SEAN KLAETSCH, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

### ORDER

This matter is before the Court on the motion of defendants Conecuh County Commission ("the Commission" or "the County")[1] and Conecuh County Sheriff Edwin Booker to dismiss. (Doc. 5). The parties have filed briefs in support of their respective positions, (Docs. 6, 19, 22), and the motion is ripe for resolution.

### BACKGROUND

As relevant to the movants, the complaint alleges that the plaintiff was arrested by a city police officer for failure to register as a sex offender and was taken to the Conecuh County jail, where he was placed in isolation. After seven days he was allowed to take a shower. Although other inmates in isolation were taken to the trustees' dorm for their shower, the plaintiff was taken to a dorm known to have violent criminals and gang members. A guard stated he would stand outside the shower, but he left. Inmates attacked the plaintiff at the request of another defendant and inflicted a broken nose, a broken tooth and two lost teeth, among other injuries. The altercation occurred in an area

---

[1] The complaint describes the Commission as the governing body of the County and identifies the defendant sometimes as the County and sometimes as the Commission. (Doc. 1 at 3, 15-16). They are for present purposes the same.

clearly visible from the jail's control booth, but no one came to assist the plaintiff until he managed to push a wall button to summon assistance. The plaintiff was thereafter denied permission to see a dentist, receive pain medication or be sent to a mental health facility, although he was taken to a hospital. (Doc. 1 at 6-7).

Count VIII alleges that Booker's "deliberate indifference to the hiring, lack of training and supervision of his deputies, jailers and of other jail personnel" resulted in the plaintiff being "brutally assaulted, suffer[ing] injuries, and [being] denied needed medical attention," in violation of the plaintiff's Fifth, Eighth and Fourteenth Amendment rights.

Count IX alleges that Booker's actions represent official policy of the Commission, rendering the Commission liable for the constitutional violations set forth in Count VIII.

## DISCUSSION

The movants first attack the sufficiency of the plaintiff's pleading under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Booker also invokes qualified immunity, and the Commission denies potential legal liability for the conduct of Booker. The Court considers these arguments in turn.

**I. Pleading.**

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2). *Twombly*, 550 U.S. at 555. "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Rule 8 establishes a regime of "notice pleading." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002). It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each

of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Twombly*, 550 U.S. at 555. There must in addition be a pleading of facts. Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*. That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

Booker is sued as a supervisor, because he "was in charge of the deputies and jailers … and was responsible for the hiring, training, supervision, direction and conduct of the jail staff." (Doc. 1 at 3). "Supervisory liability lies where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions." *Harper v. Lawrence County*, 592 F.3d 1227, 1236 (11th Cir. 2010). The causal connection can be established in any of three ways (for a total of four potential bases of liability). The first requires both a "history of widespread

abuse" placing the supervisor "on notice of the need to correct the alleged deprivation" and the supervisor's failure to do so. The second is established "when a supervisor's custom or policy … result[s] in deliberate indifference to constitutional rights." The third requires that the supervisor "directed the subordinates to act unlawfully" or "knew" they would do so "and failed to stop them from doing so." *Id*. (internal quotes omitted). As discussed below, the complaint alleges no facts making any of these four potential bases of Booker's supervisory liability plausible.[2]

First, the complaint does not accuse Booker of personally participating in the plaintiff's beating or in the denial of medical treatment, and it is quite plain from the complaint's thorough rendition that Booker did not personally participate. Even in brief, the plaintiff does not contend otherwise.

Second, the complaint does not allege that Booker directed his subordinates to beat the plaintiff and deny him treatment. Similarly, it does not allege that he knew the subordinates would do so and yet failed to stop them. Again, the plaintiff in brief does not attempt to rescue his complaint on this ground.

As noted, the complaint faults Booker for failing to train and supervise jail personnel adequately. A failure to train or supervise can support supervisory liability, but there must be a history of widespread abuse putting the supervisor on notice of the need to correct the conduct by additional training or supervision. *Cotton v. Jenne*, 326 F.3d 1352, 1361-61 (11th Cir. 2003). The complaint alleges no such history and no such notice. Nor does the plaintiff assert any such history or notice in his brief.

The only avenue left open to the plaintiff, then, is to establish that a custom or policy of Booker resulted in deliberate indifference to his constitutional rights.

---

[2] The movants suggest there is no such animal as supervisory liability after *Iqbal*. (Doc. 6 at 11, 12 n.4). Given the Court's analysis herein, there is no need to explore this suggestion in detail. The Court notes, however, that the Eleventh Circuit in *Harper* upheld a supervisory liability claim post-*Iqbal*.

Though the plaintiff cites no authority for the proposition, the Court assumes for argument that a supervisor's studied refusal to train or supervise can amount to a "custom or policy" for purposes of imposing supervisory liability. But the complaint alleges no such custom or policy. In his brief, the plaintiff suggests that the mere fact he was assaulted and denied treatment makes it plausible that such a custom or policy existed, (Doc. 19 at 3), but the Eleventh Circuit has already rejected that proposition. *Barr v. Gee*, 437 Fed. Appx. 865, 875 (11th Cir. 2011) (county liability).

Even had the existence of such a custom or policy been plausibly alleged, the claim would fail. A municipal custom or policy of failure to train or supervise is actionable only if the city was deliberately indifferent to the rights of its inhabitants, *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009), and the plaintiff acknowledges that the same standard requires him to show that Booker was deliberately indifferent to the danger posed by his failure to train or supervise. (Doc. 1 at 14-15; Doc. 19 at 4). Deliberate indifference requires a showing that the defendant was on notice of a need to train or supervise in a particular area and made a deliberate choice not to do so. *Lewis*, 561 F.3d at 1293. That notice must spring either from a past "pattern of constitutional violations" or a likelihood of such violations "so high that the need for training would be obvious," *id*., and the complaint alleges neither. An unadorned allegation of deliberate indifference (which is all the complaint provides) is but a label, a conclusion, a formulaic recitation of elements, which *Twombly* identifies as inadequate to satisfy Rules 8(a)(2) and 12(b)(6). 550 U.S. at 555. Without a pleading of facts making the allegation of deliberate indifference plausible, the claim must be dismissed. *E.g., Lee v. Alachua County*, 2012 WL 555805 at *1 (11th Cir. 2012); *Simpson v. Stewart*, 386 Fed. Appx. 859, 861 n.1 (11th Cir. 2010); *Brown v. Hillsborough County Sheriff's Office*, 342 Fed. Appx. 552, 554-55 (11th Cir. 2009).

Because the complaint as to Booker fails to comply with the precepts of *Twombly* and *Iqbal*, it is due to be dismissed on that basis. Because the complaint as to the

Commission depends on the complaint as to Booker, it is due to be dismissed on the same basis.

## II. Qualified Immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert International, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or constitutional right." *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003). The inquiry may be broken down into two parts: (1) whether the facts alleged, if true, would establish a violation of the plaintiff's rights; and (2) whether these rights were clearly established at the time of the alleged deprivation. *Id.*

"[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. ... If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert International*, 157 F.3d at 1281 (emphasis added). The reason is that an official acting outside the scope of his discretionary authority "ceases to act as a government official and instead acts on his own behalf," so that "the policies underlying the doctrine of qualified immunity no longer support its application." *Id*.

For purposes of federal qualified immunity analysis, a defendant acts within his discretionary authority when "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (internal quotes omitted). That is, "[w]e ask whether the government

employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert International*, 157 F.3d at 1282 (internal quotes omitted). For example, the issue is not whether a marshal has the authority to deliver a prisoner into unconstitutional conditions but whether he has the authority to transport and deliver prisoners. *Id*. (describing *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).

On its face, the complaint alleges that Booker was responsible for the training, supervision, direction and conduct of jail personnel. (Doc. 1 at 3). It then alleges that Booker was deliberately indifferent to these official responsibilities. (*Id*. at 14-15). The complaint itself thus establishes that Booker was acting within his discretionary authority, a proposition the plaintiff does not dispute. (Doc. 19 at 3-5).[3]

The discussion in Part I resolves the second part of the qualified immunity analysis. The facts alleged, if true, would not establish a violation of the plaintiff's constitutional rights by Booker, because they do not present a plausible basis for supervisory liability. Thus, Booker is entitled to qualified immunity and dismissal under

---

[3] *See, e.g., Daniels v. City of Hartford*, 645 F. Supp. 2d 1036, 1057 (M.D. Ala. 2009) ("[C]ourts have uniformly held that supervision of a jail and training of corrections of officers [sic] is an activity within the discretionary authority of a County Sheriff in Alabama."); *Btesh v. City Maitland*, 2011 WL 3269647 at *37 n.34 (M.D. Fla. 2011) (police chief's "alleged failure to train and supervise police officers is a matter within his discretionary authority"); *Herrick v. Carroll County*, 2009 WL 3094843 at *9 (N.D. Ga. 2009) ("There is no question that Sheriff Langley was acting within his discretionary authority in training and supervising his subordinates ….").

Rule 12(b)(6). *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002).[4]

### III. County Liability.

The complaint alleges that Booker's actions represent the official policy of the County "in matters of law enforcement, general operation of the Conecuh County Jail, and the jail's security." The complaint concludes that the County is liable for Booker's alleged constitutional violations. (Doc. 1 at 15).

In Alabama, "the duties of the counties with respect to the jails are limited to funding the operation of the jail and to providing facilities to house the jail," and "[t]he County has no authority to manage the sheriff's employees." *Turquitt v. Jefferson County*, 137 F.3d 1285, 1289 (11th Cir. 1998) (en banc) (internal quotes omitted). Consequently, "[t]he County cannot be liable for the harms that befall jail inmates due to improper operation of the jail or negligent supervision of its inmates because the County has no responsibility in that area." *Id.* at 1291.

Attempting to dodge this bullet, the plaintiff claims that the complaint actually bases the County's liability on its failure to satisfy its obligation, as delineated in *Turquitt*, to provide adequate jail funding, including for training and for surveillance monitoring equipment. (Doc. 19 at 5). But the complaint patently makes no such allegation. While its preliminary description of the Commission mentions its duty "to provide funding for personnel, equipment, medical care, services and facilities necessary to properly operate the jail," (Doc. 1 at 3), nowhere does the complaint allege that the

---

[4] "Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." *Ratliff v. DeKalb County*, 62 F.3d 338, 340 n.4 (11th Cir. 1995); *accord Swint v. City of Wadley*, 51 F.3d 988, 1001 (11th Cir. 1995); *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995). The complaint, however, seeks only damages. (Doc. 1 at 15).

Commission violated this duty.  Instead, as quoted above, it charges only a failure with respect to law enforcement, jail security and general operation of the jail – all of which areas lie beyond the County's authority and thus, under *Turquitt*, beyond the reach of civil rights liability.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is **granted**.  Conecuh County, the Conecuh County Commission and Sheriff Edwin Booker are **dismissed** as defendants for failure to state a claim on which relief can be granted.[5]

DONE and ORDERED this 3rd day of April, 2012.

                                                     s/ WILLIAM H. STEELE
                                                     CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The movants' motion includes a request for an award of costs and attorneys' fees under Section 1988.  (Doc. 5 at 2; Doc. 6 at 18).  Their briefing does not address, much less demonstrate satisfaction of, the exacting standard for such an award to a prevailing defendant.  The request, construed as a motion for such costs and fees, is thus **denied**.